UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ronnie Jerome Jackson, III,                    Civ. No. 17-2354 (JRT/BRT)

    Petitioner,

v.                                             **REPORT AND
                                               RECOMMENDATION**

Michelle Smith, Warden,
MCF-Oak Park Heights,

    Respondent.

---

Ronnie Jerome Jackson, III, OID #239471, MCF-Oak Park Heights, 5329 Osgood Ave. N., Stillwater, MN 55082, *pro se* Petitioner.

Donald F. Ryan, Esq., Crow Wing County Attorney, 213 Laurel St., Ste. 31, Brainerd, MN 56401, counsel for Respondent.

---

BECKY R. THORSON, United States Magistrate Judge.

    In 2012, Ronnie Jerome Jackson was convicted of first-degree arson and given an aggravated sentence of 115 months imprisonment. Jackson now petitions for relief from this sentence under 28 U.S.C. § 2254. (*See* Doc. No. 1, Habeas Pet.) Petitioner has also filed a renewed motion for discovery. (*See* Doc. No. 12.) For the reasons stated below, this Court recommends that the § 2254 petition and discovery motion be denied.

I.      **Background**

   A.      **Arson at a Residence in Brainerd, Minnesota**

On June 21, 2011, authorities questioned Petitioner about an early-morning fire at a residence in Brainerd, Minnesota. *State v. Jackson*, No. A13–0346, 2014 WL 902667, at \*\*1–2 (Minn. Ct. App. Mar. 10, 2014). The home was owned by the mother of Petitioner's girlfriend. *Id.* at \*1. Petitioner had been staying at the home from time to time along with his girlfriend and another housemate. *Id.* The housemate was in the house at the time of the fire, but not the girlfriend. *See id.*

At first, Petitioner denied knowing anything about the fire. *Id.* at \*2. The following day, however, Petitioner gave a statement to investigators, admitting his participation. *Id.* Petitioner said that he and a person named Nancy Portz bought gasoline from a Holiday station at around 3:29 a.m. on June 21, 2011. *Id.* Petitioner further stated:

> [A]fter they parked behind the house, [Ms. Portz] ran to the house while Jackson waited in the car. Jackson stated, 'When I . . . next time I look up, dude, it was whoosh.' When asked where Portz poured the gas, he said, 'I don't know. I just know where I was parked at . . . . Somewhere along the porch it was set. I know that much because it . . . when I looked back up, all I seen was whoosh . . . .' Jackson also stated that, at some point after they drove away, Portz threw the gas can out of the window. Jackson insisted several times that he did not think that Portz would 'do it,' but he admitted to 'egging her on.'

*Id.* Petitioner also admitted that he knew the housemate was in the house when the blaze was set. *Id.*

   B.      **Petitioner is Convicted of First-Degree Arson**

Petitioner and Ms. Portz were both charged with first-degree arson. (*See* Doc. No. 11-13, 3/18/16 Mem. Order Denying Postconviction Relief ("3/18/16 Mem. Order")

2

1.) In August 2011, a plea hearing was held for Ms. Portz's case. (*Id.*) Ms. Portz pled guilty to a newly-added felony charge of providing after-the-fact aid to an offender who committed arson, and the first-degree arson charge was dropped. (*Id.*) In her plea, Portz agreed that the State had evidence indicating that Petitioner had started the fire, and that she had provided him aid relative to the offense. (*Id.*)

Meanwhile, the case against Petitioner went forward. (*Id.* at 2.) A Sentencing Guidelines Worksheet indicated that if Petitioner was convicted, the presumed outcome was an executed prison sentence of 58 to 81 months. (*Id.*) In September 2011, however, the State provided notice that it intended to seek an aggravated sentence, on the grounds that the victims of the arson offense were "particularly vulnerable" since they were asleep in the home at the time the fire was started. (*Id.* (citing Minn. Stat. 244.10, Subd. 5a).)

In April 2012, the State filed an amended complaint against Petitioner. (*Id.*) The amended complaint charged Petitioner as a direct actor, and alternatively, as a person criminally liable for the act of another, whereas the initial complaint charged Petitioner only as a direct actor. (*Id.*) Petitioner's attorney did not specifically advise Petitioner that the amended complaint had been filed. (*Id.*) However, Petitioner's attorney frequently advised Petitioner that in the trial, the State could ask the jury to convict Petitioner of arson on the theory that he had aided and abetted Ms. Portz in the commission of the crime. (*Id.* at 2–3.)

For a lengthy period of time before trial, the State maintained an offer that would allow Petitioner to plead guilty to the arson charge and receive a 58-month executed prison sentence. (*Id.* at 3.) Counsel advised Petitioner about this offer, other possible

3

offers, and the possibility that the State would seek an aggravated sentence if the case went to trial and Petitioner was convicted. (*Id.*) During all of these discussions, Petitioner continually insisted that he would not accept any plea offer that would require him to serve any prison time. (*Id.*)

The case proceeded to a jury trial, and on May 1, 2012, the jury found Petitioner guilty of first-degree arson. (*Id.*) On May 2, 2012, a *Blakely* hearing[1] was held, and the jury responded "yes" to four special verdict form questions regarding aggravating factors. (*Id.*) After a contested sentencing hearing on November 29, 2012, the district court sentenced Petitioner to a 115 month term of imprisonment. (*Id.*)

### C.     Petitioner's Direct Appeal

In February 2013, Petitioner appealed his conviction, arguing: (1) the evidence was insufficient to convict him; (2) the district court committed plain error by failing to properly instruct the jury on accomplice liability; (3) the district court erred in permitting the State to reopen its case-in-chief; (4) the facts found by the jury were insufficient to prove that Petitioner's sleeping roommate was a "particularly vulnerable" victim; and (5) the district court committed plain error in failing to properly instruct the sentencing jury. (*Id.* at 3–4.) The Minnesota Court of Appeals affirmed Petitioner's conviction on

---

[1] "In *Blakely*, the Court explained that any *fact* (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a guilty plea or guilty verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *State v. Rourke*, 773 N.W.2d 913, 919 (Minn. 2009) (citing *Blakely v. Washington*, 542 U.S. 296, 301, 303–04 (2004)) (emphasis in original).

March 10, 2014. *See State v. Jackson*, 2014 WL 902667, at *1. The Minnesota Supreme Court denied review on April 29, 2014. (*See* Doc. No. 11-8.)

### D.     State Court Petition for Postconviction Relief

In July 2015, Petitioner filed a petition for postconviction relief in state court. (*See* Doc. No. 11-9.) Petitioner alleged that the State failed to disclose exculpatory evidence, improperly presented inconsistent theories of liability at trial, and presented "false evidence." *See Jackson v. State*, No. A16–0751, 2017 WL 1164503, at *1 (Minn. Ct. App. June 20, 2017). Petitioner also asserted that he was denied effective assistance of trial and appellate counsel. *See id.* After receiving testimony from Petitioner's trial counsel, the district court denied the petition, finding that Petitioner's claims were barred by *State v. Knaffla*, 243 N.W.2d 737 (1976), and that trial and appellate counsels' representations did not fall below an objective standard of reasonableness. *Id.* The Minnesota Court of Appeals affirmed, and the Minnesota Supreme Court denied review on June 20, 2017. (*See* Doc. No. 11-23.)

### E.     Petition for Relief Under 28 U.S.C. § 2254

Petitioner filed this action on June 29, 2017. (*See* Doc. No. 1.) Petitioner asserts the following four claims: (1) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding or suppressing the factual basis of his accomplice's plea deal; (2) the State used factually inconsistent theories to obtain a guilty verdict in violation of due process; (3) trial counsel was ineffective because he did not advise Petitioner to accept the State's plea offer; and (4) appellate counsel was ineffective because he "lacked

5

necessary information" to provide a meaningful review, and failed to provide Petitioner with information that he needed to raise issues in his *pro se* brief. (*Id.* at 5–10.)

### F. Discovery Motion

Along with his § 2254 petition, Petitioner filed a motion for discovery. (*See* Doc. Nos. 5, 6.) This Court denied the motion without prejudice. The Court explained that Petitioner "may renew his request for discovery upon completion of the briefing, at which time this Court will determine whether there is good cause to permit further discovery. *See* Rule 6, Rules Governing Section 2254 Cases." (Doc. No. 9, 7/14/17 Order 2.) Petitioner filed a renewed discovery motion on August 23, 2017.

## II. Analysis

### A. Standard of Review Under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief will not be granted with respect to any claim adjudicated on the merits in state court proceedings unless such adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v.*

6

*Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, the writ can be granted "if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.

"Clearly established Federal law" includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). An "unreasonable application" of those holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). To satisfy this high bar, a habeas petitioner is required to show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Woods*, 135 S. Ct. at 1376 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). On collateral review of state court convictions, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington*, 562 U.S. at 102–03).

7

### B.     Exhaustion and Procedural Default

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A). This requirement gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.*; *see also O'Sullivan v. Boerckel*, 535 U.S. 838, 845 (1999). A petitioner meets the "fair presentation" requirement if the state court "rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999). "If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now." *Middleton v. Roper*, 455 F.3d 838, 855 (8th Cir. 2006). In other words, the exhaustion requirement is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law"; but "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (citing *Teague v. Lane*, 489 U.S. 288 (1989) and *Wainright v. Sykes*, 433 U.S. 72 (1977)).

### C. The State Courts' Resolution of Petitioner's Ineffective Assistance of Trial Counsel Claim Was Not Contrary to or an Unreasonable Application of Clearly Established Federal Law

A successful ineffective-assistance-of-counsel claim generally requires two showings: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 690–92 (1984). Under the first prong, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citing *Strickland*, 466 U.S. at 689). Under the second prong, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

Petitioner argues that his trial counsel was ineffective because he "completely failed to offer the petitioner his professional advice as to whether the petitioner should accept or reject the State's plea offer of 58 months . . ." (Doc. No. 2-1, Mem. of Law in Supp. Pet'r's § 2254 Pet. ("Pet'r's Mem.") 10–11.) The Minnesota Court of Appeals rejected this argument because "[t]estimony from trial counsel demonstrates that he advised Jackson of his options, preserved Jackson's autonomy to decide whether to enter a plea agreement, and gave Jackson all of the relevant information required to make an informed decision." 2017 WL 1164503, at *4. The court also noted that Petitioner "was adamantly opposed to accepting a plea offer that would require him to serve prison time."

*Id.* Thus, the court concluded that trial counsel's representation did not fall below "an objective standard of reasonableness." *Id.* This was not an unreasonable application of *Strickland*. The evidence supports the finding that Petitioner's counsel's performance (i.e., advice) was not deficient. Further, Petitioner cannot establish prejudice—that he would have accepted the plea deal resulting in a lower sentence than he eventually received—because of his strict opposition to a plea deal resulting in prison time.

Petitioner did not receive ineffective assistance of trial counsel, and the state court's resolution of his claim was not an unreasonable application of *Strickland*.

### D. Petitioner's Ineffective Assistance of Appellate Counsel Claim Should be Denied on the Merits

Petitioner also argues that his appellate counsel was ineffective because he "refused to provide . . . necessary documents or legal advice about claims concerning petitioner's codefendant and the petitioner went on to file his pro se appellate brief without raising certain issues as a result of appellate counsel's actions and appellate counsel filed petitioner's direct appeal based on an incomplete record . . ." (Pet'r's Mem. 12.) This claim is slightly different than the one considered and rejected by the Minnesota Court of Appeals:

> Jackson also argues that he was denied effective assistance of appellate counsel because appellate counsel's representation was based on an incomplete record—*it lacked the transcript from the postconviction hearing*. But even the best appellate counsel could not be expected to have a transcript of a hearing that occurred after the appellate representation. Jackson was not denied effective assistance of counsel.

2017 WL 1164503, at *4 (emphasis added). Now, Petitioner seems to be arguing that his appellate counsel somehow prevented him from raising certain claims on direct appeal

10

that are unrelated to the postconviction hearing that subsequently took place. As a result, it appears that Petitioner did not exhaust the precise claim that he is attempting to raise in this action. (*See* Doc. No. 11-9, State Court Pet.)

Setting aside the exhaustion issue, an "application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Petitioner does not explain what claims his appellate counsel allegedly prevented him from raising. Therefore, Petitioner fails to establish prejudice under the second prong of the *Strickland* analysis. Petitioner thinks more claims should have been raised, but he has no constitutional right for his counsel to raise all possible issues on appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every non frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").[2]

---

[2]     This case does not present a situation where Petitioner was deprived of his right to a direct appeal. "[I]n situations where the defendant expressly requests that his counsel file an appeal and counsel fails to do so, thereby depriving the defendant of his right to appeal, courts have not required a showing of prejudice or of likely success on appeal." *United States v. Vazquez-Munoz*, 453 F. Supp. 2d 1078, 1086 (N.D. Iowa 2006) (citing *Hollis v. United States*, 687 F.2d 257, 259 (8th Cir. 1982)). Such a failure by counsel is "considered to be prejudicial *per se* and the defendant is not required to show that a direct appeal would have been successful or even to suggest what issues may have been presented on appeal." *Id.* at 1086–87. Here, Petitioner pursued a direct appeal,

(Footnote Continued on Next Page)

Petitioner did not receive ineffective assistance of appellate counsel.

### D.     Petitioner's *Brady* and Due Process Claims are Procedurally Defaulted

The Minnesota Court of Appeals held that Petitioner's remaining claims were barred under *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976), which held that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). This "longstanding procedural bar . . . prevents state prisoners from seeking postconviction relief based on claims that could have been raised on direct appeal, either because the prisoner knew or should have known of the claims at that time." *Vann v. Smith*, No. 13-cv-893 (SRN/JSM), 2015 WL 520565, at *6 (D. Minn. Feb. 9, 2015).

Petitioner argues that he has "cause" for procedurally defaulting his claims. (Pet'r's Mem. 3–10.) "The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Gordon v. Arkansas*, 823 F.3d 1188, 1196 (8th Cir. 2016) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," may constitute "cause under this standard." *Murray*, 477 U.S. at 488. As

---

(Footnote Continued from Previous Page)
represented by counsel, who raised several claims on Petitioner's behalf. *See State v. Jackson*, 2014 WL 902667.

set forth by the Minnesota Court of Appeals, however, the basis for Petitioner's *Brady* claim, and his claim that the State used inconsistent theories of liability to obtain a verdict, were available to Petitioner on direct appeal. *See Jackson v. State*, 2017 WL 1164503, at *2 ("Jackson first argues that the state committed a *Brady* violation when it failed to provide him with the details of his accomplice's plea deal. A review of the record shows that the basis of this claim was ascertainable on direct appeal."); *see also id.* ("Because the state's theory at trial involved who the actual principal of the arson was, and because Jackson knew about Portz's plea deal, Jackson should have known about this claim on direct appeal."). Therefore, Petitioner cannot establish cause, and his *Brady* and due process claims are procedurally defaulted.

### E.   Petitioner's Renewed Motion for Discovery Should be Denied

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). To determine whether there may be "good cause" to allow a habeas petitioner to pursue discovery, a habeas court "must identify the essential elements of the petitioner's substantive claim, evaluate whether specific allegations show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, and, if the petitioner has made such allegations, provide the necessary facilities and procedures for an adequate inquiry." *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2005) (quoting *Bracy*, 520 U.S. at 904, 908–09).

Petitioner's allegations do not provide reason to believe that he would be able to show an entitlement to relief with further factual development through discovery. Instead,

the record of the state court proceedings conclusively establishes that Petitioner is not entitled to relief in federal court. Therefore, Petitioner's discovery motion should be denied.

### F.   Certificate of Appealability

Finally, this Court notes that a § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A COA should not be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a habeas petition is denied on procedural grounds without reaching the underlying merits, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Jurists of reason would not debate whether the Minnesota Court of Appeals correctly applied *Strickland* to Petitioner's claim for ineffective assistance of trial counsel; whether Petitioner received ineffective assistance of appellate counsel; or whether Petitioner's remaining claims are procedurally defaulted. Therefore, this Court recommends that a COA should not be issued.

### III. Recommendation

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **DENIED**;

2. Petitioner's Renewed Motion for Discovery (Doc. No. 12) be **DENIED**;

3. Petitioner's request for a certificate of appealability be **DENIED**; and

4. This action be **DISMISSED WITH PREJUDICE**.


Date: November 6, 2017.           *s/ Becky R. Thorson*_____
                                  BECKY R. THORSON
                                  United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).