UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| RONNIE JEROME JACKSON, III,<br><br>                    Plaintiff,<br><br>v.<br><br>MICHELLE SMITH, *Warden, MCF-OAK Park Heights*,<br><br>                    Defendant. | Civil No.  17-2354 (JRT/BRT)<br><br>MEMORANDUM OPINION<br>AND ORDER ADOPTING REPORT<br>AND RECOMMENDATION |

Ronnie J. Jackson, III, No. 239471, Minnesota Correctional Facility - Oak Park Heights, 5329 Osgood Avenue North, Stillwater, MN  55082, *pro se* plaintiff.

Donald F. Ryan, **OFFICE OF THE CROW WING COUNTY ATTORNEY**, 213 Laurel Street, Suite 31, Brainerd, MN  56401 and Edwin W. Stockmeyer, III, and Matthew Frank, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1800, Saint Paul, MN  55101, for defendant.

Plaintiff Ronnie Jackson brought this petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody.  Jackson is serving time for a conviction of first-degree arson in Minnesota state court.  In support of his petition, Jackson states four grounds: (1) the state denied him due process by committing a *Brady* violation; (2) the state denied him due process by using factually inconsistent theories to obtain a guilty verdict; (3) ineffective assistance of trial counsel; and (4) ineffective assistance of appellate counsel.  Jackson has also filed a Renewed Motion for Discovery and a request for a Certificate of Appealability ("COA").  The Magistrate Judge issued a Report and

Recommendation ("R&R") recommending that the Court deny Jackson's petition, motion, and request. Because the Court will find that Jackson's due process claims are procedurally defaulted and his ineffective assistance of appellate counsel claim was not exhausted at the state level, the Court will overrule Jackson's objections and adopt the Magistrate Judge's R&R. The Court will thus deny Jackson's Petition, his Renewed Motion for Discovery, and his request for a COA.

## BACKGROUND

Jackson is a prisoner detained at Minnesota Correctional Facility – Oak Park Heights. (Pet. at 1, June 29, 2017, Docket No. 1.) He was convicted of first-degree arson on November 29, 2012, in Minnesota state court and sentenced to 115 months. (*Id.*) *See also State v. Jackson* ("*Direct Appeal*")*,* 2014 WL 902667, at \*2 (Minn. Ct. App. Mar. 10, 2014).

### I. FACTS PRESENTED AT TRIAL

In the early hours of June 21, 2011, police officers responded to a call about a fire at a house in Brainerd where Jackson's girlfriend, J.S., lived. *Id.* at \*1. The house was owned by J.S.'s mother, and Jackson had been staying there off and on since he and J.S. began their relationship. *Id.*

The night before, Jackson had gotten into an argument with J.S. while at her mother's other house in Barrows. *Id.* After the argument, Jackson went to the Brainerd house and packed some of his belongings. *Id.* He then returned to the Barrows house where he woke J.S. up by punching her in the face. *Id.* When J.S.'s mother called 911,

he said, "I can burn both your houses down." *Id*. He also told a friend that if he really wanted to he could burn both the houses down. *Id*.

A police sergeant responded to J.S.'s mother's 911 call at the Barrows house and directed officers to begin looking for Jackson. *Id*. One officer noticed Jackson's car outside a trailer at the Lazy Acres trailer park and spoke to a woman, D.P., at the trailer. *Id*. She told the officer that Jackson was not there, but her gray Hyundai Sonata was missing. *Id*. At that moment, the officer received a call about the fire at the Brainerd house and responded. *Id*. After responding to the fire, he returned to D.P.'s trailer because she wanted to report that her car was stolen. *Id.* D.P. told the officer that Jackson and her daughter, Nancy Portz, had arrived at her house just after the officer left to respond to the fire call. *Id*. Portz was driving D.P.'s car when they arrived, but a few minutes later Portz and Jackson left in Jackson's car. *Id*.

Officers investigating the fire spoke with an employee at a gas station who said that a customer matching Jackson's description bought a gasoline can, a lighter, and five dollars' worth of gasoline earlier that morning. *Id*. at *2. The employee described the car that Jackson had gotten out of, and the description matched D.P.'s car. *Id*. That same morning, officers stopped Jackson driving his car. *Id.* Portz was with him. *Id*. They found a lighter and J.S.'s purse in the car, as well as a Visa gift card whose numbers matched the Visa card used to buy the items at the gas station. *Id*. Officers also found a gas can along the route between the Brainerd home and D.P.'s trailer.

While Jackson first denied knowing anything about the fire, he gave a statement the next day that admitted his participation. *Id*. He said that he and Portz bought the

-3-

gasoline, that he handed the can to Portz, that he told Portz where J.S. lived, and that Portz put gloves on and ran to the house while Jackson waited in the car. *Id*. He said: "When I . . . next time I look up, dude, it was whoosh." *Id*. He said that he did not know where Portz poured the gas, but "[s]omewhere along the porch it was set." *Id*. While Jackson claimed that he did not think Portz would "do it," he admitted to "egging her on." *Id*. Two people were in the house when it was set on fire, including Jackson's roommate, and Jackson admitted that he knew one of them was there. *Id*.

## II.   JACKSON'S CONVICTION

Jackson and Portz were both charged with first-degree arson in violation of Minn. Stat. § 609.561, subd. 1. (March 18, 2016 Order Denying Postconviction Relief ("State Ct. Postconviction") at 2, Aug. 12, 2017, Docket No. 11-13.) Portz ultimately entered an *Alford* plea to a lesser felony charge of providing after-the-fact aid to an offender who committed arson under Minn. Stat. § 609.495, subd. 3. (*Id*.) Portz agreed that the state had evidence indicating that Jackson had started the fire. (*Id*.) Jackson maintained his not guilty plea, and the state provided notice that it would seek an aggravated sentence on the grounds that the victims of the arson were "particularly vulnerable" because they were asleep inside the house when the fire was started. (*Id*. at 3.) The state also filed an amended complaint in Jackson's case; while the initial complaint only charged him as a direct actor under Minn. Stat. § 609.561, subd. 1, the amended complaint added an alternative charge as a person criminally liable for the act of another under Minn. Stat. § 609.05, subds. 1-2. (*Id*.) Jackson's attorney might not have actually advised him that

the amended complaint had been filed, but he advised him on numerous occasions that the state could ask the jury to convict him of arson on a theory of aiding and abetting Portz. (*Id*.) He also discussed a plea agreement offered to Jackson and the possibility that the state would seek an aggravated sentence. (*Id*. at 4) Jackson was insistent that he would not accept any offer that required him to serve prison time. (*Id*.)

The case proceeded to a jury trial, and the jury found Jackson guilty of first-degree arson. (*Id*.) Portz did not testify at his trial. (*Id.* at 11.) Jackson did not testify and did not call any witnesses. *Direct Appeal*, 2014 WL 902667, at *2. However, his statement to investigators in which he acknowledged participation in the crime with Portz was admitted. *Jackson v. State* ("*Postconviction Appeal*"), 2017 WL 1164503, *1 (Minn. Ct. App. Mar. 27, 2017), *review denied* (June 20, 2017).

### III. STATE COURT DIRECT APPEAL

Jackson appealed his conviction in state court on the following grounds: (1) the evidence was insufficient to convict him; (2) the district court erred by failing to properly instruct the jury on accomplice liability; (3) the district court erred in permitting the state to reopen its case-in-chief; (4) the facts found by the jury were insufficient to prove that Jackson's sleeping roommate was a "particularly vulnerable" victim; and (5) the district court erred in failing to properly instruct the sentencing jury. *Direct Appeal*, 2014 WL 902667, at *1. The Minnesota Court of Appeals affirmed Jackson's conviction, holding that the evidence was sufficient to convict him and that no reversible error occurred. *Id.*

The Minnesota Supreme Court denied review. (Apr. 29, 2014 Order Denying Review, Aug. 12, 2017, Docket. No. 11-8.)

## IV.  STATE COURT PETITION FOR POSTCONVICTION RELIEF

Jackson also sought postconviction relief in state court. (State Ct. Postconviction at 1.) He alleged that the state failed to disclose exculpatory evidence, improperly presented inconsistent theories of liability at trial, and presented false evidence. (*Id*. at 5-8.) He also alleged ineffective assistance of both trial and appellate counsel. (*Id.* at 8-17.) The court denied his petition, finding that the majority of Jackson's claims were barred by *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976), which limits the claims that can be considered for postconviction relief.[1] (*Id.* at 5-6, 8, 12, 15, 17.) The court also found that Jackson's trial and appellate counsels' representations did not fall below an objective standard of reasonableness. (*Id.* at 16.) The Minnesota Court of Appeals affirmed, and the Minnesota Supreme Court denied review. *Postconviction Appeal*, 2017 WL 1164503, at *1.

## V.   PETITION FOR RELIEF UNDER 28 U.S.C. § 2254

Jackson filed the present petition under 28 U.S.C. § 2254 on June 29, 2017. (Pet. at 1.) He seeks relief on four grounds: (1) the state violated due process under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding the factual basis of his codefendant's plea;

---

[1] *Knaffla* precludes consideration of claims that were raised in the direct appeal or claims that petitioner knew about or should have known about but did not raise in the direct appeal. 243 N.W.2d at 741.

(2) the state violated due process by using factually inconsistent theories to obtain a guilty verdict; (3) trial counsel was ineffective because he did not advise Jackson to accept the state's plea offer; and (4) appellate counsel was ineffective because he lacked the necessary information to provide Jackson with a meaningful review and/or failed to provide Jackson with the necessary documents that he needed to raise issues in his *pro se* brief.  (*Id.* at 5, 7-8, 10.)  Jackson also filed a Renewed Motion for Discovery.  (Renewed Mot. for Disc., Aug. 23, 2017, Docket No. 12.)

On November 7, 2017, Magistrate Judge Becky R. Thorson issued an R&R recommending that the Court deny claims (1) and (2) because they are procedurally defaulted, deny claim (3) because the state court's resolution was not contrary to or an unreasonable application of clearly established Federal law, and deny claim (4) both on procedural grounds because Jackson did not exhaust state law remedies and on the merits because he had not shown that his appellate counsel was ineffective.  (R&R at 9-14, Nov. 7, 2017, Docket No. 17.)  The Magistrate Judge also recommended that the Court deny Jackson's Renewed Motion for Discovery and decline to grant a COA.  (*Id.* at 14.)  Jackson timely filed Objections to the R&R.  (Objs., Nov. 20, 2017, Docket No. 18.)

## DISCUSSION

### I. STANDARD OF REVIEW

Upon the filing of an R&R by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The district judge must determine *de novo*

any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). Jackson specifically objects to the Magistrate Judge's findings as to each of his claims except ineffective assistance of trial counsel. He also objects to the Magistrate Judge's recommendations that his Renewed Motion for Discovery and his request for a COA be denied. The Court will thus review all findings except ineffective assistance of trial counsel *de novo*.

### A.   28 U.S.C. § 2254

Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant habeas corpus relief to a state prisoner on any issue decided on the merits by a state court unless the proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it either reaches an opposite conclusion of law or arrives at a different outcome based on "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable

application" of Supreme Court precedent if it identifies the correct legal principal but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 413.

The § 2254 standard is "intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). "Clearly established federal law" includes "only the holdings, as opposed to the dicta," of Supreme Court decisions. *Id.* (quoting *White*, 134 S.Ct. at 1702). "Unreasonable application" means "objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* (quoting *White*, 134 S.Ct. at 1702). This high bar can be satisfied only by showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, federal courts may only overturn state court decisions "when there could be no reasonable dispute that they were wrong." *Id*. Such a high standard promotes federalism and comity and reserves habeas as "a guard against extreme malfunctions" in state criminal justice systems. *Id*. (quoting *Harrington*, 562 U.S. at 102-03).

### B. Exhaustion and Procedural Default

A federal court cannot grant a § 2254 petition unless the petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A).[2] If a petitioner has not exhausted all available state court remedies, a court can still deny the petition on the

---

[2] A federal court can also grant a petition if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

merits. *Id.* § 2254(b)(2). The exhaustion requirement gives the state an opportunity "to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). To afford the state this opportunity, the petitioner "must 'fairly present' his claim in each appropriate state court . . ., thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365). "Fair presentation" occurs when the state court rules on the merits of the petitioner's claims or if the petitioner "presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999).

The exhaustion requirement is also satisfied "if it is clear that [petitioner's] claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). But the same state procedural bar that gives rise to exhaustion "provides an independent and adequate state-law ground for the conviction and sentence," thus preventing federal habeas review of the claim, "unless the petitioner can demonstrate cause and prejudice for the default." *Id.* at 162 (citing *Teague v. Lane*, 489 U.S. 288, 298 (1989)).

## II.   DUE PROCESS VIOLATION: *BRADY*

Jackson alleges that the state committed a *Brady* violation, thus violating his right to due process of law, because it withheld the factual basis of Portz's plea. Jackson alleges that the factual basis of Portz's plea "was material and/or impeaching to [his] case" because her plea "established [Jackson] as being the one to start the fire and [Portz]

-10-

only providing some aid after [he] started the fire," when in Jackson's case the state presented evidence that Portz started the fire and that he was liable as an accomplice. (Pet. at 5.) Jackson raised this claim in his state court petition for postconviction relief, but the court held that the claim was procedurally barred under *Knaffla*. *Postconviction Appeal*, 2017 WL 1164503, at *1. The Minnesota Court of Appeals affirmed. *Id.* at 2.

On a petition for postconviction relief in Minnesota, *Knaffla* bars consideration of any claims that were made on direct appeal and any claims that were known about at the time but not raised. 243 N.W.2d at 741. *Knaffla* also bars claims that **should** have been known at the time of direct appeal. *Leake v. State*, 737 N.W.2d 531, 542 (Minn. 2007). In deciding Jackson's petition for postconviction relief, the Minnesota Court of Appeals reviewed the record and found that "the basis of [Jackson's *Brady*] claim was ascertainable on direct appeal." *Postconviction Appeal*, 2017 WL 1164503, at *2. Jackson learned that Portz had pleaded guilty four months before trial, the state disclosed its witness list—which listed Portz and her conviction—in advance of trial, and Jackson moved the district court for a new trial based on Portz's plea agreement before his sentencing. *Id.* Because Jackson knew or should have known about this claim on direct appeal, the court found that it was barred by *Knaffla*. *Id.*

The Magistrate Judge found that this claim was procedurally defaulted and that Jackson did not demonstrate "cause." (R&R at 12.) Jackson objects, arguing that the Magistrate Judge "fail[ed] to apply Supreme and Federal Court precedent" and "ignor[ed] properly submitted evidence by petitioner (exhibit #7)." (Objs. ¶ 3.) Jackson cites *Murray v. Carrier*, where the Supreme Court dealt with cause in the context of

ineffective assistance of counsel. 477 U.S. 478, 488 (1986). The Court stated that the question of cause for procedural default "does not turn on whether counsel erred," but rather "must ordinarily turn on whether the prisoner can show that some **objective** factor **external** to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* (emphasis added). Such objective external impediments can be demonstrated by "showing that the factual or legal basis for a claim was not reasonably available to counsel or that 'some interference by officials' made compliance impracticable." *Id.* (internal citations omitted) (quoting *Brown v. Allen*, 344 U.S. 443, 486 (1953)).

The Court finds that Jackson's claim is procedurally defaulted and that he has not shown cause to excuse the default. Jackson argues that "the focus of the 'cause' inquiry is not on the conduct of the petitioner" but instead turns on external influences. (Objs. ¶ 3.) Jackson is correct that showing cause depends on objective external impediments; however, he has not shown that objective external factors prevented him from bringing this claim on direct appeal. As the Minnesota Court of Appeals noted, Jackson was well aware of Portz's plea deal, and in fact requested a new trial prior to his sentencing based on the same allegations he advances now. *Postconviction Appeal*, 2017 WL 1164503, at *2. No objective external factors impeded Jackson or his counsel from bringing this claim on appeal, thus the claim is procedurally defaulted.[3]

---

[3] Jackson's Petition alleges that "the state withheld the necessary information" such that "appellate counsel had no reason to believe there was relevant information." (Pet. at 6.) His Objections reference Exhibit 7, which is a letter he received from his attorney stating that the attorney did not request or receive a transcript of Portz's guilty plea hearing. (Objs. ¶ 3 (citing Decl. ¶ 24, Ex. 7, June 29, 2017, Docket No. 3).) Jackson's attorney explained that "the state's

### III. DUE PROCESS: INCONSISTENT PROSECUTION THEORIES

Jackson alleges that the state violated due process by using factually inconsistent theories to obtain a guilty verdict. (Pet. at 7.) He alleges that the state allowed Portz to plead guilty to aiding and abetting based on her statement that he had started the fire, while the state used his statement that Portz started the fire to obtain a guilty verdict at his trial. (*Id.*) The court found that this claim was also barred by *Knaffla*, and the appellate court affirmed. *Postconviction Appeal*, 2017 WL 1164503, at *2. The Magistrate Judge found that this claim, like the *Brady* claim, was procedurally defaulted and that Jackson had not shown cause. (R&R at 12-13.)

The Court also finds that Jackson's due process claim regarding inconsistent prosecution is *Knaffla* barred for the same reasons that his *Brady* claim is *Knaffla* barred. The basis for both claims was available on direct appeal. *See Postconviction Appeal*, 2017 WL 1164503, at *2 ("Because the state's theory at trial involved who the actual principal of the arson was, and Jackson knew about Portz's plea deal, Jackson should have known about this claim on direct appeal.").[4] Because Jackson has not shown cause, his due process claim is procedurally defaulted.

---

decisions regarding prosecuting Portz in this case did not have any impact on its ability to prosecute you." (*Id.*) Instead of supporting Jackson's argument that an external factor prevented him from asserting the *Brady* and due process claims in his direct appeal, Exhibit 7 actually highlights the fact that he and his attorney were aware of Portz's plea and that his attorney chose not to pursue the claims because they would not have been successful. Because these claims were not pursued on direct appeal, they are barred by *Knaffla*.

[4] Jackson also argues that the state repeatedly declared that Portz pleaded guilty to "aiding and abetting" and not "aiding and abetting after-the-fact." (Objs. ¶ 3.) The Court finds that this distinction does not affect the analysis and cannot constitute cause. Portz's plea had no

## IV.     INEFFECTIVE ASSISTANCE: TRIAL COUNSEL

Jackson does not object to the R&R's findings with respect to his claim of ineffective assistance of trial counsel, thus the Court will not review those findings.  The Court therefore adopts the Magistrate Judge's finding that Jackson did not receive ineffective assistance of trial counsel and that the state court's resolution of his claim was not an unreasonable application of federal law.  (R&R at 10.)

## V.     INEFFECTIVE ASSISTANCE: APPELLATE COUNSEL

Jackson's § 2254 petition alleges that "Appellate Counsel lacked necessary information (documents) to provide the petitioner with a meaningful review and/or failed to provide the petitioner with necessary information (documents) to raise the issues in his *pro se* brief despite petitioner's request for the information."  (Pet. at 10.)

### A.     Exhaustion

The Magistrate Judge found that Jackson had not exhausted this precise claim. (R&R at 11.)  Jackson does not object to the R&R's finding regarding exhaustion, thus the Court adopts it.  Had Jackson objected, the Court would find no exhaustion because he did not "fairly present" the claim in state court.  *See Baldwin*, 541 U.S. at 29.

---

bearing on Jackson's conviction because the state did not need to convict Portz of first degree arson in order to convict Jackson as an accomplice.  *See, e.g., State v. Caldwell*, 803 N.W.2d 373, 383, 391 (Minn. 2011) (upholding defendant's conviction of aiding and abetting first-degree premeditated murder even though accomplice was acquitted of first-degree murder and convicted instead of second-degree murder).  Under Minnesota statute, "[a] person liable [for crimes of another] may be charged with and convicted of the crime although the person who directly committed it has not been convicted, or has been convicted of some other degree of the crime or of some other crime based on the same act."  Minn. Stat. § 609.05, subd. 4.  Thus the state's representations of Portz's plea did not impede Jackson from bringing the claim on direct appeal.

-14-

### B. Merits

The Magistrate Judge found that, even if Jackson had exhausted his claim of ineffective assistance of appellate counsel, the Court should deny his claim on the merits because he does not explain what claims his appellate counsel prevented him from raising. (R&R at 11 (citing 28 U.S.C. § 2254(b)(2)).) Jackson objects, arguing that counsel's failure to provide necessary information or documents "effectively denied" his right to present a *pro se* brief. (Objs. ¶ 4.)

Claims of ineffective assistance of counsel are held to a particularly high standard on habeas review. The federal court must be "doubly deferential" because both the state and the defense attorney must be afforded the benefit of the doubt. *Woods*, 135 S. Ct. at 1376 (quoting *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013)). A successful ineffective assistance of counsel claim requires two showings: (1) that counsel's performance was deficient; and (2) that the deficient performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668, 690-92 (1984). As to the first prong, Jackson must overcome the strong presumption that counsel exercised reasonable professional judgment. *See id*. at 689. Jackson must show that, under the circumstances, the challenged action could not be considered "sound trial strategy." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). As to the second prong, Jackson must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quoting *Strickland*, 466 U.S. at 694). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The Court finds Jackson's objections unavailing. Jackson cites *Chamberlain v. Ericksen*, which recognized that "all defendants have a basic right to address the court with a *pro se* brief." 744 F.2d 628, 630 (8th Cir. 1984). But Jackson's right to file a *pro se* brief was not violated, as he filed a *pro se* supplemental brief on direct appeal. (*See Pro Se* Suppl. Brief, A13-0346, Aug. 12, 2017, Docket No. 11-3.) The right to address the court with a *pro se* brief does not necessarily imply the right to be provided with **all** documents a defendant might deem necessary to file such a brief. The *Chamberlain* court suggested that defendants might have a limited right to a trial transcript on appeal, 744 F.2d at 631, but Jackson has not alleged that he did not receive a trial transcript. The root of the problem is that Jackson has not specified which materials and which claims he was unable to present, thus he cannot show that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Paulson*, 773 F.3d at 904.[5] As such, his claim fails the second prong of *Strickland*.

Jackson's claim also fails the first prong of *Strickland* because he has not overcome the strong presumption that his attorney was exercising sound judgment. As the Magistrate Judge noted, Jackson has no constitutional right to have his appellate counsel raise all possible issues on appeal. (R&R at 11.) Indeed, the Supreme Court has said that "appellate counsel who files a merits brief need not (**and should not**) raise

---

[5] Jackson mentions *Brady* and due process violations, but the Court has ultimately considered those claims and found them unavailing, thus the Court cannot find that the outcome of his appeal would have been different had he been able to submit those claims in a *pro se* brief.

-16-

every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (emphasis added); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (indigent defendants do not have a constitutional right to "compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points"). Jackson fails to overcome the strong presumption that his appellate counsel exercised sound professional judgment and fails to show that he suffered prejudice.

The Court finds that Jackson's claim of ineffective assistance of counsel fails both on procedural grounds because he did not exhaust the claim and on the merits.

## VI.   RENEWED MOTION FOR DISCOVERY

A federal habeas petitioner, unlike the usual civil litigant, "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). A petitioner must show "good cause" for discovery, which requires the court to identify "specific allegations" that "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Id.* at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). The Magistrate Judge found that Jackson had not made such a showing. (R&R at 13.) Jackson objects, arguing that "further factual development through discovery **would** provide reason to believe petitioner was 'prejudiced' by the State of Minnesota suppressing material evidence relating to [his] case." (Objs. ¶ 5.) The Court finds that there is no reason to believe that

further development of the facts would allow Jackson to demonstrate that he is entitled to relief. The Court has found that Jackson's due process claims are procedurally defaulted and that his ineffective assistance of counsel fails because he did not exhaust state remedies. As such, further factual development could not make his claims viable.

## VII. CERTIFICATE OF APPEALABILITY

The Court may grant a COA only where petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Flieger v. Delo*, 16 F.3d 878, 882 (8th Cir. 1994). To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings. *Id.* at 882-83. As demonstrated above, resolution of Jackson's § 2254 petition involves a relatively straightforward application of clearly established law. Thus, for purposes of appeal under 28 U.S.C. § 2253, the Court finds it unlikely that reasonable jurists would find the issues raised in petitioner's § 2254 petition debatable, or that another court would decide this petition differently. The Court therefore declines to grant a COA.

## CONCLUSION

The Court finds that Jackson's due process claims regarding a *Brady* violation and inconsistent prosecution theories are procedurally defaulted because they are barred under Minnesota state law by *Knaffla* and Jackson failed to show cause to justify the default. The Court also finds that Jackson's claim for ineffective assistance of appellate counsel fails because he did not exhaust state law remedies and, alternatively, on the

merits because he did not show that appellate counsel's assistance was objectively unreasonable or show prejudice. The Court finds that further factual development would not make Jackson's claims more viable, thus the Court will deny his Renewed Motion for Discovery. The Court will also decline to grant Jackson a COA as Jackson has not made a substantial showing of the denial of a constitutional right.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections to the Report and Recommendation [Docket No. 18] are **OVERRULED** and the Magistrate Judge's Report and Recommendation [Docket No. 17] is **ADOPTED in full**.

2. Plaintiff's Petition for a Writ of Habeas Corpus [Docket No. 1] is **DENIED**.

3. Plaintiff's Renewed Motion for Discovery [Docket No. 12] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: January 30, 2018              _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                                  Chief Judge
                                           United States District Court